## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SYRETTA MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-2747-JWL-TJJ |
| | ) | |
| SYNCHRONY BANK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Synchrony Bank's Motion for Leave to File Third-Party Complaint (ECF No. 31). Synchrony Bank ("Synchrony") seeks an order allowing it to file a third-party complaint against Antoinette Hall, Plaintiff's daughter and co-applicant for the credit card account serviced by Synchrony which is at issue in this case. Plaintiff opposes the motion. For the reasons stated below, the Court denies the motion.

### Factual and Procedural Background

Plaintiff Syretta Mayo filed the petition in this action in the District Court of Wyandotte County, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") against Synchrony, Equifax Information Services, LLC, Trans Union LLC, and Experian Information Solutions Inc. On October 31, 2016, Trans Union LLC removed the matter to this court. Plaintiff alleges that beginning in 2015, Defendants reported she was jointly responsible for a credit card that was charged off in the amount of $2,000.00 by Synchrony. Plaintiff denied having applied for credit with Synchrony and lodged a dispute with the credit reporting agencies (Equifax, Trans Union, and Experian). The agencies later notified Plaintiff that Synchrony had reaffirmed the debt belonged to Plaintiff. Plaintiff alleges she has suffered

damages as a result of Defendants having reported derogatory and inaccurate statements about her and her credit history to third parties.

In Count I of her petition, Plaintiff alleges the credit reporting agencies violated the FCRA by including inaccurate information in her credit reports and by failing to reinvestigate and correct the inaccuracies when Plaintiff disputed them.   In Count II, Plaintiff alleges that when the credit reporting agencies reported Plaintiff's dispute of the charge-off, delinquency and false credit reporting to Synchrony, Synchrony violated the FCRA by failing to respond to reinvestigation requests and continuing to falsely report about Plaintiff.

In its proposed third-party complaint, Synchrony contends it received a credit card application that listed Hall as the primary applicant and Plaintiff as the co-applicant. After conducting credit checks and reviewing information, Synchrony opened a credit card account with Hall and Plaintiff as joint account holders.   Charges were made on the account and when no payments were made, the account was charged off.   Synchrony provided information about the charge-off to the credit reporting agencies, indicating Plaintiff was a joint account holder. When Synchrony learned from the credit reporting agencies that Plaintiff was disputing the report, it allegedly reinvestigated the account, relying on the information in the credit application, and confirmed the reporting was correct.   Synchrony contends that by listing Plaintiff as a co-applicant and providing confidential information about Plaintiff, Hall negligently or intentionally misrepresented to Synchrony that Plaintiff knew of and consented to Hall's listing of her as a co-applicant.

The Scheduling Order includes a February 17, 2017 deadline for the parties to file any motions to amend their pleadings.   Synchrony filed the instant motion on that date, and the motion is thus timely.

2

**Legal Standards**

Under Federal Rule of Civil Procedure 14(a)(1), a defendant may implead a third party "who is or may be liable to it for all or part of the claim against it."   Because Synchrony made its request more than 14 days after serving its answer, the Court must grant leave to file a third-party complaint.[1]

Whether to grant or deny leave to file a third-party complaint is a matter within the court's sound discretion.[2]   Because the rule is intended to reduce the multiplicity of litigation, courts construe it liberally.[3]   Unless the filing will prejudice another party, a court should generally allow the filing of a "proper" third-party action.[4]   A "proper" third-party action is one asserted against "a non-party who is or may be liable to [the defending party] for all or part of the claim against [the defending party]."[5]   In other words, the defendant's claim against the third party must in some way be dependent on the outcome of the main claim, or the third party must be secondarily liable to defendant.   "A defendant may not contend that another person is liable directly to the plaintiff.   Rather, the rule allows a defendant to bring in parties if liability may be passed on to the impleaded third party."[6]

---

[1]  Fed. R. Civ. P. 14(a)(1).

[2]  *Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard,* 216 F.R.D. 511, 514 (D. Kan. 2003); *Clark v. Assocs. Commercial Corp.,* 149 F.R.D. 629, 635 (D. Kan. 1993).

[3] *United of Omaha Life Ins. Co. v. Reed,* 649 F. Supp. 837, 841 (D. Kan. 1986).

[4]  *Clark,* 149 F.R.D. at 635.

[5]  Fed. R. Civ. P. 14(a)(1).

[6]  *Willard,* 216 F.R.D. at 513 (citing *In re Dep't of Energy Stripper Well Exemption Litig.,* 752 F. Supp. 1534, 1536 (D. Kan. 1990)).

3

Of importance in this case is the principle that Rule 14(a) is solely a procedural mechanism; it does not affect the substantive rights of the parties.[7]   "An impleader claim cannot be used to assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action."[8]

## Analysis

In this case, Synchrony's proposed third-party complaint seeks to recover from Hall the full amount of any judgment entered against Synchrony in this action.   Synchrony asserts three counts: (1) negligent misrepresentation, in that if Plaintiff did not know of or consent to Hall's listing her as a co-applicant, Hall should have known her representation to Synchrony was false and she intended for Synchrony to rely on the representation; (2) intentional misrepresentation, which alleges Hall knew her representations were false or she made them recklessly without knowing the truth; and (3) indemnification if Synchrony is found liable to Plaintiff.[9]   As to the first two counts, Synchrony states that "[a]s a result of Hall's representations, Synchrony has been named as a defendant in this action and has been damaged."[10]

Plaintiff disputes that Synchrony's proposed pleading is a proper third-party complaint. According to Plaintiff, Synchrony does not assert and cannot establish a contractual right to indemnification from Hall, and must therefore rely on operation of law to assert such claim. Plaintiff further argues the FCRA is consistently interpreted to preclude indemnification claims,

---

[7]  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, 887 F. Supp. 262, 264 (D. Kan. 1995).

[8]  3 James Wm. Moore et al., Moore's Federal Practice § 14.04[3][a] (3d ed. 2016).   *See also Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989) ("[W]hile Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability.").

[9]  ECF No. 31-1 at 5-7.

[10]  *Id.* at 6.

and that no federal common-law right of indemnification exists for FCRA actions.   In sum, Plaintiff argues that allowing Synchrony to assert an indemnification claim would be futile.   In addition, Plaintiff contends that Synchrony's claims of negligent and intentional misrepresentation are entirely independent of her claims under the FCRA, thereby making them ineligible for impleader.[11]

At first blush, Defendant's motion appears meritorious.   Plaintiff alleges Synchrony is liable to her in connection with reporting false, derogatory information to the credit reporting agencies, specifically that Plaintiff was a joint account holder and that the account was charged off.   Synchrony contends that but for Hall's misrepresentation that Plaintiff was her co-applicant for the credit card, it would not have reported any information about Plaintiff to the credit reporting agencies.   The claims appear to share a common factual basis, and if Synchrony is liable to Plaintiff, Hall's conduct seems to make her liable to Synchrony.   However, the law does not support that conclusion.

Instead, because the basis of Plaintiff's substantive legal claim is a federal statute, the Court must determine whether the FCRA expressly or impliedly provides a right to indemnity.[12] Defendant cites no case in which a court has found a right to indemnity or contribution under the

---

[11]  Plaintiff also argues that the factors courts use in exercising discretion with regard to motions for leave to file third-party claims weigh in her favor.   Those factors include: (1) the benefits of a single action versus prejudice to the other party and confusion; (2) the timeliness of the request and prejudice to plaintiff in delay; (3) whether the main case would necessarily expand in scope; (4) whether impleading a new party would unduly delay or complicate the trial; and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of the third-party complaint.   *Willard,* 216 F.R.D. at 514.   Because the Court concludes that Synchrony has not asserted a proper third-party complaint, the discretionary factors do not come into play.

[12]  *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520 (W.D. Wash. 2006).

FCRA, while Plaintiff offers considerable authority to the contrary.[13]   In reply, Defendant accurately points out that none of the cases are from this court or the Tenth Circuit, and argues most are factually distinguishable because they do not involve a consumer who provided allegedly false information when opening the account.   Defendant offers no reason why the factual distinction would change the result, however, nor does it address cases holding a defendant in an FCRA claim has no right of indemnification where the putative third-party defendant is a consumer.

"A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law."[14] The FCRA contains no language *expressly* providing for indemnity.[15]   Whether a federal statute contains an *implicit* creation of a right of action requires analysis of factors known as the *Cort* factors:   (1) whether the plaintiff is a member of the class for whose benefit Congress created the statute; (2) whether any indication exists of legislative intent to create or deny the remedy sought; (3) whether the remedy sought is consistent with the purposes of the legislative scheme; and (4) whether it would be inappropriate to infer a cause of action based on federal law because the cause of action is one traditionally relegated to the states.[16]

---

[13]   *See* ECF No. 33 at 6-8.

[14]   *Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998).

[15]   15 U.S.C. § 1681 *et seq.*

[16]   *Cort v. Ash*, 422 U.S. 66, 78 (1975).

In *McSherry v. Capital One FSB*,[17]  the court applied the *Cort* factors to the FCRA and concluded the statute contains no implied congressional intent to create a right to contribution or indemnification for furnishers of information.[18]   The Court finds the analysis sound and agrees with the conclusion.   Defendant offers no authority or argument to the contrary.

Similarly, the *McSherry* court found no federal common law right to contribution or indemnification available to furnishers of information under the FCRA.[19]   The Court likewise finds the analysis sound and agrees with the conclusion, which Defendant does not contradict.

In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, courts must engage in statutory construction. The ultimate question in such cases is whether Congress intended to create the private remedy that the plaintiff seeks to invoke.[20]   Instrumental to the *McSherry* court's analysis is the FCRA's purpose, which is to protect consumers and provide them with a private enforcement action rather than to broaden the scope of protection against lawsuits for furnishers. Indeed, the furnisher provisions are "intended to regulate furnishers vis à vis consumers."[21]

---

[17]  236 F.R.D. 516 (W.D. Wash. 2006).

[18]  *Id.* at 520-22.   Plaintiff alleges Synchrony is a furnisher of information under the FCRA (ECF No. 1 at 11-13).   Synchrony denies all paragraphs of Plaintiff's petition which include such allegation (ECF No. 12 at 5), but affirmatively asserts its role in its proposed third-party complaint (ECF No. 31-1 at 4).   In its reply in support of the instant motion, Synchrony does not dispute it is a furnisher.   The FCRA does not define "furnisher," but courts have defined the term as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies.   *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1352 (D. Kan. 2006).

[19]  *McSherry*, 236 F.R.D. at 522-23.

[20]  *N.W. Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 91 (1981).

[21]  *McSherry,* 236 F.R.D. at 521.

From a policy standpoint, therefore, it is difficult to conjure up support for a rule which would allow a furnisher to bring an indemnification action.

Another consideration is one more typically discussed in deciding whether a proposed third-party complaint is proper: the third-party claim must not only seek to recover for any liability defendant may owe to plaintiff, but the third-party claim "must be derivative of the plaintiff's claim."[22]   Here, Plaintiff points out that Synchrony's proposed claims are premised on their allegedly inaccurate reports being caused by Hall's misrepresentations.   But those misrepresentations cannot support Plaintiff's claim against Synchrony, because the FCRA does not authorize a private cause of action for a furnisher's *reporting* of inaccurate information.[23] Instead, the FCRA requires Plaintiff to prove that she notified the credit reporting agencies of her dispute, the agencies in turn notified Synchrony, and Synchrony failed to investigate or correct the disputed information.[24]   Synchrony's claim that Hall supplied false information is therefore not derivative of Plaintiff's claim that Synchrony failed to properly investigate.   The following articulation aptly describes this case:

> [T]he [third-party defendant] did not actively lead [defendant] to violate the FCRA's requirements of conducting an investigation with respect to disputed information and not accessing credit reports for impermissible purposes. Although [defendant] may be technically correct that "in the absence of the [third-party

---

[22] *EEOC v. Gard Corp.*, 795 F. Supp. 1070, 1072 (D. Kan. 1992).

[23] *See Jarrett v. Bank of America*, 421 F. Supp. 2d 1350, 1353 n.2 (D. Kan. 2006) ("Furnishers are also required to provide accurate information to credit reporting agencies . . . but Congress did not create a private right of action for violation of that provision.").

[24] *Pittman v. Experian Info. Sols., Inc.*, No. 14-cv-13591, 2016 WL 6995730, at *3 (E.D. Mich. Nov. 30, 2016); *see also Fishback v. HSBC Retail Svcs. Inc.*, 944 F. Supp. 2d 1098, 1107-09 (D.N.M. 2013) (upon notification by credit reporting agency of dispute, furnisher must conduct investigation, review all relevant information from and report investigation results to credit reporting agency; consumer can bring cause of action based on furnisher's willful or negligent failure to perform these duties).

defendant]'s alleged intentional or negligent misrepresentations, [defendant] would not be a defendant to Plaintiff's FCRA and defamation claims in the Main Action," that is only because but for the [third-party defendant]'s alleged acts, the possibility that [defendant] would conduct inadequate investigations in response to disputed charges or impermissibly access plaintiff's credit report would never have arisen. Under these circumstances, the Court finds that this "but for" causal connection is too speculative to permit impleader of the [third-party defendant] under Rule 14.[25]

In *McMillan*, Defendant's proposed third-party complaint included claims of negligent and intentional misrepresentation and indemnification—the same claims Synchrony asserts against Hall.   As in *McMillan*, the procedural method of impleader under Rule 14(a) is not available to Synchrony.   That says nothing about the merits of Synchrony's claims, but merely recognizes that state substantive law will determine whether Synchrony may recover against Hall once the rights between Plaintiff and Synchrony are determined.

**IT IS THEREFORE ORDERED** that Defendant Synchrony Bank's Motion for Leave to File Third-Party Complaint (ECF No. 31) is **DENIED**.

Dated this 27th day of March, 2017 at Kansas City, Kansas.

<u>s/ Teresa J. James</u>
Teresa J. James
U.S. Magistrate Judge

---

[25]  *McMillan v. Equifax Credit Info. Svcs., Inc.*, 153 F. Supp. 2d 129, 132-33 (D. Conn. 2001).